**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |  |
|---|---|---|
| ALLAN A. KASSENOFF, individually and as guardian of his minor children A.K., C.K. and J.K., | ) ) ) ) | Case No. 3:23-cv-24085-TKW-ZCB |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ROBERT HARVEY, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ........................................................................................1

II.  STANDARD OF REVIEW ........................................................................8

III.  ARGUMENT ..............................................................................................8

    A.  The Fair Report Privilege Is Inapplicable to Plaintiffs'
    Defamation Claims.................................................................................8

    B.  The Amended Complaint Does Not Violate the Single
    Publication/Action Rule ......................................................................11

    C.  Plaintiffs' Amended Complaint Sufficiently States A Claim For
    Intentional Infliction of Emotional Distress .......................................15

    D.  Plaintiffs' Amended Complaint Sufficiently States A Claim For
    Tortious Interference With Business Relationship ..............................19

    E.  Plaintiffs' Amended Complaint Sufficiently States A
    Cyberstalking Claim ...........................................................................28

    F.  Plaintiffs' Amended Complaint Is Not A Shotgun Pleading ............31

IV.  CONCLUSION.........................................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................8

*Audiology Distribution, LLC v. Simmons*,
   2014 WL 7672536 (M.D. Fla. May 27, 2014) ..................................26

*Bailey v. Janssen Pharmaceutica, Inc.*,
   288 F. App'x 597 (11th Cir. 2008) ....................................35

*Carroll v. Trump*,
   2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023)................................10

*David v. Textor*,
   189 So. 3d 871 (Fla. 4th DCA 2016)................................30

*Deligdish v. Bender*,
   2023 WL 5016547 (M.D. Fla. Aug. 7, 2023)..............................23, 30

*Dershowitz v. Cable News Network, Inc.*,
   541 F. Supp. 3d 1354 (S.D. Fla. 2021) ................................8

*Edwards v. Wal-Mart Stores East, LP*,
   2021 WL 10519455 (N.D. Fla. Sept. 15, 2021) ..........................31, 32

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
   647 So. 2d 812 (Fla. 1994) ..............................27

*Fisher v. Mitchell*,
   2022 WL 19333275 (N.D. Fla. Apr. 18, 2022) ................................36

*Flink v. City of Fort Walton Beach Police Dep't*,
   2022 WL 19363792 (N.D. Fla. Oct. 24, 2022)................................31

*Folta v. New York Times Co.*,
   2019 WL 1486776 (N.D. Fla. Feb. 27, 2019) ................................10

*Fridovich v. Fridovich*,
   598 So. 2d 65 (Fla. 1992) ..............................14

*Garfinkle v. Jewish Family Serv. of Greater Hartford, Inc.*,
   2022 WL 6366186 (Conn. Super. Ct. Aug. 15, 2022)...............................21, 22

*GEICO v. AFO Imaging, Inc.*,
   2021 WL 734575 (M.D. Fla. Feb. 25, 2021)................................32, 34

*Geller v. Von Hagens*,
   2011 WL 2434217 (M.D. Fla. June 13, 2011) ....................................................12

*Gomez v. City of Miami*,
   2023 WL 6376511 (S.D. Fla. Sept. 29, 2023) ...................................................17

*Grayson v. No Labels, Inc.*,
   2021 WL 2869870 (M.D. Fla. Jan. 26, 2021) ....................................................11

*Griffin v. United States*,
   2019 WL 1092741 (M.D. Fla. Jan. 23, 2019) ....................................................14

*GRLPWR, LLC v. Rodriguez*,
   2023 WL 5666203 (N.D. Fla. Aug. 25, 2023).........................................2, 11, 12

*Heekin v. CBS Broad., Inc.*,
   789 So. 2d 355 (Fla. 2d DCA 2001)..................................................................10

*Hunter v. Unknown Prosecutor*,
   2022 WL 3369494 (M.D. Fla. Aug. 16, 2022).....................................................26

*Insurance Field Services, Inc. v. White & White*,
   384 So.2d 303 (Fla. 5th DCA 1980)..................................................................27

*Karantsalis v. City of Mia. Springs, Fla.*,
   17 F.4th 1316 (11th Cir. 2021) ...........................................................................8

*Krapacs v. Bacchus*,
   301 So. 3d 976 (Fla. 4th DCA 2020)..................................................................30

*McKinney v. Portico, LLC*,
   2023 WL 2889737 (N.D. Fla. Mar. 30. 2023).....................................................34

*Miller v. Gizmodo Media Group, LLC*,
   2019 WL 1790248 (S.D. Fla. Apr. 24, 2019).....................................................11

*Miller v. Gizmodo Media Grp.*,
   994 F.3d 1328 (11th Cir. 2021) ...........................................................................9

*Neptune v. Lanoue*,
   178 So. 3d 520 (Fla. 4th DCA 2013)..................................................................29

*Paul v. Mayo Clinic*,
   2016 WL 11431491 (M.D. Fla. June 16, 2016) ...........................................15, 16

*Realauction.com, LLC v. Grant St. Grp., Inc.*,
   82 So. 3d 1056 (Fla. 4th DCA 2011)..................................................................27

*Ropella Group Inc. v. Loparex LLC*,
   2022 WL 18539364 (N.D. Fla. Oct. 25, 2022)...................................................32

*Scott v. Blum*,
 191 So. 3d 502 (Fla. 2d DCA 2016) .................................................................30

*Shiles v. News Syndicate Co.*,
 27 N.Y.2d 9 (N.Y. 1970) .................................................................................9

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
 792 F.3d 1313 (11th Cir. 2015) ...............................................................31, 33

*Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*,
 2022 WL 320952 (S.D. Fla. Jan. 28, 2022) ......................................................26

Plaintiffs Allan Kassenoff and his minor children A.K., C.K. and J.K. (the "Children") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint.

## I.   INTRODUCTION

As explained in the Amended Complaint,[1] Defendant Robert Harvey ("Harvey") is a social media "influencer" with millions of followers, including over 3,000,000 on TikTok, who "create[ed] and upload[ed] false, defamatory and misleading videos to various social media platforms about Mr. Kassenoff in an effort to depict him as an abusive spouse [to Catherine Kassenoff] and father who took advantage of the corrupt Westchester County matrimonial court system, including by stating that Mr. Kassenoff bribed (i.e., 'paid off') everyone to get custody of the Children." (AC, ¶¶2, 11).  Not content with simply defaming Mr. Kassenoff, Harvey also "instructed his 3,000,000+ followers to bombard Mr. Kassenoff's then employer, Greenberg Traurig, LLP ('GT'), and Samsung, one of GT's biggest clients, with emails, phone calls, voicemails, and social media attacks, resulting in Mr. Kassenoff losing his job at Greenberg Traurig." (*Id.*, ¶2).  Even worse, Harvey's actions hurt the Children.  As explained in the Amended Complaint, "Harvey falsely called the Children's father an abuser and publicized the Children's mother's suicide

---

[1] Defendant's Motion to Dismiss refers to the Amended Complaint (Dkt. 7) as "AC," a convention Plaintiffs will likewise utilize.

to tens of millions of people, all of which has caused the Children to suffer severe emotional distress." (*Id.*, ¶¶150-155).  Perhaps most disturbing is that Harvey's sole motivation for destroying Mr. Kassenoff's life (and that of the Children) was money and social media "clout." (*Id.*, ¶¶1, 3, 71).

Despite reviewing countless defamation cases, Plaintiffs have failed to find a single one where a defendant acted even close to as egregiously as Harvey.  For example, less than 4 months ago, this Court mostly denied a motion to dismiss claims for defamation, tortious interference with contractual relations and tortious interference with business relationships, where the defendant's behavior was similar to Harvey's – except Harvey behaved infinitely worse. *GRLPWR, LLC v. Rodriguez*, 2023 WL 5666203, at *2 (N.D. Fla. Aug. 25, 2023) (Wetherell, J.).  In *GRLPWR*, the defendant made 3 allegedly defamatory statements in 3 videos that she uploaded to her YouTube account, which "has just more than 1,000 subscribers" and whose "videos have only dozens to several hundred views." *Id.* at *1; Defendant's Dispositive Motion to Dismiss and For Award of Attorney's Fees (Dkt. 7) at 2, *GRLPWR, LLC v. Rodriguez*, Civ. Action No. 3:23-cv-16480-TKW-HTC (Ex. 1 to the Declaration of Allan Kassenoff).

Conversely, Harvey has created and uploaded approximately 40 videos attacking Mr. Kassenoff, which included over 40 defamatory statements and which, as of the date of the Amended Complaint, "have been viewed over 39,000,000 times,

'liked' nearly 5,000,000 times and generated over 150,000 comments" on TikTok alone.  (AC, ¶¶2, 70).  As a result of Harvey's actions, "Mr. Kassenoff received hundreds if not thousands of harassing emails, voicemails, DMs [direct messages] and text messages in addition to comments made to the videos themselves, many of which included death threats."  (*Id.*, ¶¶103-108).  Moreover, as explained above, Harvey also instructed his followers to attack Greenberg Traurig ("Greenberg") and Samsung, causing Mr. Kassenoff to lose his job as a Shareholder at the firm.  (*Id.*, ¶¶2, 133).  Then, showing a total lack of remorse, Harvey gleefully boasted that he got both Greenberg and Samsung "to fire" Mr. Kassenoff:



(*Id.*, ¶134).

    In his Motion to Dismiss (Dkt. 11, "MTD"), Harvey tries to justify his outrageous behavior by arguing that he is a "citizen journalist" – a fictitious label

entitling him to no special status under the law – and falsely claiming that he merely "reported on Plaintiff and Catherine's story as it played out in their divorce action."[2] (MTD at 1). Harvey, however, is ***not*** a journalist. Journalists report on the news; they do not seek to have the subject of their articles fired; they do not cause their "followers" to harass people; and they certainly do not threaten people. Harvey has done each of these things:

- Harvey caused Mr. Kassenoff to lose his job by instructing his millions of followers to bombard Greenberg, one of its biggest clients (Samsung) and a human resources conference at which a Greenberg employee was speaking with emails, phone calls, voicemails, and/or social media attacks. (AC, ¶¶2, 127-129).



- Harvey shared the contact information of Gus Dimopoulos (Mr.

---

[2] Harvey's claim is belied by the fact that Mr. Kassenoff filed for divorce on May 24, *2019* and Harvey didn't post his first Kassenoff video until May 31, *2023*. (AC, ¶¶35, 68).

Kassenoff's divorce attorney) with his followers in order to have them harass him, resulting in Mr. Dimopoulos' firm receiving over 7,700 phone calls, over 560 voicemails, and hundreds of e-mails in the following five days. (*Id.*, ¶¶142-144).

 

- Harvey posted a picture of Mr. Kassenoff's girlfriend, Ms. Shira Kraft, and "falsely claim[ed] that Ms. Kraft was 'disparag[ing]' Ms. Kassenoff 'all over the Internet,' leading his followers to attack her and even contact her employers demanding that she be fired." (*Id.*, ¶145).



- Harvey traveled to New York City (30 minutes from Mr. Kassenoff's home) and made the following threatening statement:

  "*Take a look at this Allan. I've got something really important to show you. It's a beautiful city* [with Harvey making a menacing expression, walking out onto the balcony of his New York City hotel room]." (*Id.*, ¶146).



- In response to receiving a message from Plaintiff C.K. asking him to "[s]top getting involved [as he doesn't] even know the true story," Harvey screamed: "Is this you Allan, messaging me through your children's account?" (*Id.*, ¶¶113-114).



Critically, Harvey's arguments in support of his Motion to Dismiss are conclusory and factually and/or legally incorrect. For example, according to Harvey, Mr. Kassenoff's defamation claims must be dismissed under New York's fair report privilege, codified at N.Y. Civ. Rights Law §74. (MTD at 30-33). Although Harvey alleges that "§74 provides immunity to persons who make statements appearing in the media that fairly and truly summarize or restate the allegations in judicial filings," (*id.* at 30), he fails to even submit those purported "judicial filings," thereby preventing the Court from making the requisite comparison. Similarly, Harvey argues that Plaintiffs' tortious interference claim must be dismissed under the single publication rule because that claim, "like the Defamation Claims, is based on the allegation that Defendant disseminated allegedly defamatory statements in videos that caused harm to Kassenoff's employment and professional reputation." (*Id.* at 12). Harvey, however, fails to demonstrate that the claims are based upon the *same facts*, as required by that doctrine. As demonstrated below, Mr. Kassenoff's tortious interference claim is based upon *different facts* than his defamation claims. Finally, Harvey fails to demonstrate that Mr. Kassenoff is not entitled to an injunction "restraining Harvey from committing any acts of harassment" or that the Amended Complaint is an improper shotgun pleading.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally limited to the four corners of the complaint." *Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1360 (S.D. Fla. 2021) (internal quotation marks omitted).  And, the Court "must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Karantsalis v. City of Mia. Springs, Fla.*, 17 F.4th 1316, 1319 (11th Cir. 2021) (internal quotation marks omitted).

## III.    ARGUMENT

### A.    The Fair Report Privilege Is Inapplicable to Plaintiffs' Defamation Claims

Harvey makes a single argument in support of his Motion to Dismiss Plaintiffs' defamation claims: "The Defamation claims should be dismissed pursuant to New York law as commentary on legal proceedings are subject to the Fair

Reporting defense afforded pursuant to N.Y. Civ. Rights Law §74." (MTD at 30).[3]

New York's fair report privilege, however, is inapplicable to Plaintiffs' defamation

claims because "the privilege created by section 74 of the Civil Rights Law does not

attach to the publication of a report of matrimonial proceedings." *Shiles v. News*

*Syndicate Co.*, 27 N.Y.2d 9, 15 (N.Y. 1970). As explained by the *Shiles* Court,

> *Section 235 of the Domestic Relations Law*, which prohibits the taking
> of copies, or even the inspection, of the records of matrimonial
> proceedings by any one other than the parties or their counsel, *manifests
> a clear legislative design that those proceedings be kept secret and
> confidential. Notwithstanding its broad language, we do not believe
> that section 74 of the Civil Rights Law was ever intended to defeat this
> design* by extending to persons who, despite section 235, were able to
> obtain such records, the right to publish and disseminate their contents
> without regard for their truth or falsity or for the harm they may cause
> to the reputations of the individuals involved.

*Id.* at 14;[4] *see also Miller v. Gizmodo Media Grp.*, 994 F.3d 1328, 1332 (11th Cir.

2021) ("[W]e agree with the district court and hold that *Shiles* precludes the

application of the § 74 privilege only when the publication concerns court records

that have been automatically sealed by operation of DRL § 235."). Accordingly,

because Harvey claims he was reporting on the Kassenoff's divorce case and

because divorce proceedings in New York are sealed pursuant to DRL §235, New

---

[3] Plaintiffs do not dispute the application of New York law to Harvey's fair report
privilege defense solely for the purposes of the instant Motion to Dismiss as the
defense fails under both New York and Florida law.

[4] All emphasis is added unless otherwise noted.

York's fair report privilege is inapplicable to Plaintiffs' defamation claims.

Even if New York's fair report privilege applied to sealed matrimonial cases (it does not), Harvey's reliance on it still fails.  Because the privilege requires the challenged statement be a "fair and true report" of the judicial proceeding, it goes without saying that a defendant seeking to utilize the privilege must present those judicial materials to the Court so that it can compare the two.  *See* N.Y. Civ. Rights Law §74 ("A civil action cannot be maintained against any person, firm or corporation, for the publication of a *fair and true report* of any judicial proceeding.").  In other words, "[w]hen a report of a pleading is the subject of a request for immunity under section 74, *a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis*."  *Carroll v. Trump*, 2023 WL 2669790, at *7 (S.D.N.Y. Mar. 28, 2023) (internal quotation marks omitted).  Because Harvey has failed to provide this Court with the judicial materials that he claims to be reporting on, the Court is unable to determine if Harvey's defamatory statements constitute a "fair and true report."  Accordingly, Harvey's Motion to Dismiss Mr. Kassenoff's defamation claims under New York's fair report privilege must be denied.[5]

_____

[5] The result would be same under Florida's fair report privilege.  *See Folta v. New York Times Co.*, 2019 WL 1486776, at *4 (N.D. Fla. Feb. 27, 2019) ("Determining whether a report is fair and accurate requires a close comparison of the report and the documents and information from which it is drawn."); *Heekin v. CBS Broad., Inc.*, 789 So. 2d 355, 360 (Fla. 2d DCA 2001) (reversing application of the fair report

**B.     The Amended Complaint Does Not Violate the Single Publication/Action Rule**

According to Harvey, the Amended Complaint's claims for tortious interference with a business relationship and intentional infliction of emotional distress must be dismissed under the single publication/action rule.  (MTD at 11-14).  "The single publication/single action rule ... does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based ...  The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the *same facts* into several causes of action all meant to compensate for the same harm."  *GRLPWR, LLC v. Rodriguez*, 2023 WL 5666203, at *7 (N.D. Fla. Aug. 25, 2023) (Wetherell, J.) (internal quotation marks omitted) (alterations in original).  But, "[t]he single action rule does 'not prevent recovery upon separate causes of action which are properly pled upon the *existence of independent facts*.'"  *Id.* (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)); *see also Miller v. Gizmodo Media Group, LLC*, 2019 WL 1790248, at *11 (S.D. Fla. Apr. 24, 2019) ("In contrast, a plaintiff may recover for separate claims when they are 'properly pled upon the *existence of independent facts*.'").

---

privilege where there was "nothing in the record to indicate that the trial court compared the broadcast at issue with the public records").  Moreover, the Florida fair report privilege only applies to "journalists and news media."  *Grayson v. No Labels, Inc.*, 2021 WL 2869870, at *3 (M.D. Fla. Jan. 26, 2021) ("Defendants' argument stumbles at the first hurdle: there are no allegations that they are news media entities and/or journalists *as required for the application of the privilege*.").

In *GRLPWR*, this Court declined to apply the single action rule, concluding that plaintiff's tortious interference claims were based upon different statements than its defamation claim:

> Here, the defamation claim is based only on the statements referenced in paragraphs 24-26 of the complaint, but the tortious interference claims are based on other statements made by Defendant. *See, e.g.,* Doc. 1 at ¶¶20-22, 60, 68.… Thus, the tortious interference claims are not due to be dismissed based on the single-action rule.

2023 WL 5666203, at *7; *see also Geller v. Von Hagens*, 2011 WL 2434217, at *4 (M.D. Fla. June 13, 2011) (denying defendant's motion for summary judgement on a tortious interference claim where that claim was "not simply a restatement of the defamation claim but is based on separate conduct engaged in by the Defendants").

Similarly, Mr. Kassenoff's tortious interference claim is based upon *different* statements and conduct than his defamation claims. As readily seen from even a cursory review of the Amended Complaint, the tortious interference claim is based upon Harvey's instructions to his followers to attack Greenberg and its clients. To wit, the paragraphs contained within Count V (the tortious interference claim) make that abundantly clear. (*See, e.g.,* AC, ¶187 ("Harvey knowingly, intentionally and unjustifiably interfered with Mr. Kassenoff's business relationships by instructing his 3,000,000+ followers to attack Greenberg Traurig and its clients."); ¶189 ("Harvey's instructions to his 3,000,000+ followers to attack Greenberg Traurig and its clients, have directly and proximately caused Mr. Kassenoff to suffer significant

damages.")).

Conversely, the defamation claims are premised on Harvey's defamatory statements about Mr. Kassenoff, including, for example, statements that Mr. Kassenoff abused his wife and Children; Mr. Kassenoff took advantage of judicial corruption; and Mr. Kassenoff "paid off" court-appointed personnel. Again, this is abundantly clear simply by looking at the paragraphs contained within Counts I-III (the defamation claims). (*See, e.g.,* AC, ¶157 ("Harvey has published false, defamatory and misleading statements about Mr. Kassenoff in the Harvey Videos (and his comments thereto), falsely accusing Mr. Kassenoff of (1) abusing, including physically, Ms. Kassenoff and the Children and that such abuse was confirmed by both CPS and police reports and (2) being awarded sole custody by a corrupt judicial system that improperly excluded Ms. Kassenoff (and her attorneys) from custody hearings **and** because he bribed (i.e., 'paid off') everyone."); ¶163 (same); ¶170 (same)).[6]

Harvey also argues that the Amended Complaint's intentional infliction of emotional distress ("IIED") claim must be dismissed under the single

---

[6] The fact that the tortious interference and defamations claims are based upon different statements and conduct is also demonstrated by analyzing the paragraphs incorporated by reference into the Counts. (*Compare* AC, ¶¶123-134 (detailing the facts supporting the tortious interference claim) *with* ¶¶78-122 (detailing Harvey's defamatory statements) & ¶¶135-140 (detailing the harm caused by Harvey's defamatory statements)).

publication/action rule. (MTD at 13-14). Harvey again is wrong. As apparent from the Amended Complaint's Counts – conspicuously omitted by Harvey – the Children are asserting the IIED claim but not the defamation claims:

**COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(On Behalf of A.K., C.K. and J.K.)**

**COUNT I – DEFAMATION *PER SE***
**(On Behalf of Mr. Kassenoff)**

**COUNT II – GENERAL DEFAMATION**
**(On Behalf of Mr. Kassenoff)**

**COUNT III – DEFAMATION BY IMPLICATION**
**(On Behalf of Mr. Kassenoff)**

Not surprisingly, Harvey has not cited a single case applying the single action rule to a tort claim brought by a plaintiff as a result of a defamation claim brought by a *different* plaintiff. (MTD at 13-14).[7] The reason is simple – no such case exists as the rule requires both claims to be brought by the same plaintiff: "It is clear that *a plaintiff* is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts." *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992). In fact, because the Children were not defamed by Harvey, they cannot be asserting their IIED claim

---

[7] In fact, *Griffin v. United States*, 2019 WL 1092741 (M.D. Fla. Jan. 23, 2019), which Harvey relies upon (MTD at 13-14), applied Texas law and did not even involve a defamation claim.

as "an end-run around a successfully invoked *defamation* privilege."

Because the single publication/action rule does not apply to either the tortious interference or IIED claims, Harvey's Motion to Dismiss based upon that rule must be denied.

### C.    Plaintiffs' Amended Complaint Sufficiently States A Claim For Intentional Infliction of Emotional Distress

Harvey makes three primary arguments in support of his Motion to Dismiss the Children's IIED claim.  First, according to Harvey, the "AC does not allege that the Defendant's conduct was directed at the Children 'which is a required showing as part of the first IIED element.'"  (MTD at 14 (quoting *Paul v. Mayo Clinic*, 2016 WL 11431491, at *4 (M.D. Fla. June 16, 2016))).   In other words, "because [Harvey's] outrageous conduct is alleged to be directed at Kassenoff, not the Children," the Children's IIED claim must be dismissed.  (MTD at 15).  But, the case cited by Harvey, *Paul v. Mayo Clinic*,[8] actually confirms that the Amended Complaint sufficiently alleges the IIED claim.  (*Id.* at 14-15).  In *Paul*, the Complaint alleged that the defendants perpetrated a fraud on one plaintiff (Ms. Paul) by falsely representing that her relative, Mr. Otabe (a Japanese national in liver failure), had been approved for a liver transplant, leading Ms. Paul to pay the defendants

---

[8] The portion of *Paul* quoted by Harvey (MTD at 15) is actually taken from a parenthetical describing the defendants' argument and is missing the first six words: "Several Florida cases have held that."  2016 WL 11431491, at *4.

$370,000.  2016 WL 11431491, at *1, 5.  As a result of that fraud, other relatives of

Ms. Paul and Mr. Otabe filed IIED claims, arguing that the defendants' conduct was

also "directed at" them: "In sum, the Amended Complaint alleges that Defendants

perpetrated a fraud on [all of them] by falsely representing that the [Mayo Clinic]

had approved Mr. Okabe to be listed for a liver transplant."  *Id.* at *5.  The Court

agreed, concluding that "[e]ach IIED Plaintiff alleges intentional or reckless conduct

*directed at him or her* that may form the basis of an IIED claim."  *Id.*

Similarly, Harvey's actions were directed not just at Mr. Kassenoff, but also

at the Children.  For example, Harvey showed the Children's unblurred faces in his

videos; he showed Plaintiff C.K.'s direct message to him in one of his videos and

mocked her father about it; he publicized their mother's suicide to tens of millions

of people; he accused their father of abusing them; and he caused their father to lose

his job, putting their economic future into jeopardy.  (AC, ¶¶7, 113-114, 150-152).

Moreover, Harvey acknowledged that his actions impacted the Children:

> Many of you have asked if we get justice for Catherine Kassenoff's
> death, then what will happen to the kids. ***Many of you have asked if I
> am adding to their trauma.  I will say this.  I have struggled with that
> question.  I have really really struggled with it.  But here is my
> deciding factor on when featuring this case.*** Since 2016 in the State
> of New York, these 22 children have been taken from this Earth by an
> abusive parent.  And as you can see, most of them under the age of five.
> The New York Family Courts are allowing abusive parents into the
> lives of children every single day.  New York Family Courts sell
> children to the highest bidder.  Just like Allan Kassenoff.

(*Id.*, ¶155 (emphasis in original)).

Harvey next argues that "[t]he Children fail to plead any conduct that rises to the level of outrageous conduct required to state a cause of action for themselves." (MTD at 16).  Harvey again is wrong.  "To demonstrate that the conduct was outrageous, the plaintiff must show that the defendant's actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Gomez v. City of Miami*, 2023 WL 6376511, at *10 (S.D. Fla. Sept. 29, 2023) (internal quotation marks omitted).  Each of the allegations set forth above – e.g., showing the Children's unblurred faces; publicizing their mother's suicide; causing their father to lose his job; etc. – constitutes behavior that is outrageous, extreme, "beyond all possible bounds of decency [and] utterly intolerable in a civilized community."

Harvey's third argument is that the Amended Complaint "fails to allege that Defendant's conduct caused the Children to suffer severe emotional distress." (MTD at 16).  Harvey is again wrong.  The Amended Complaint alleges that the Children have suffered severe emotional distress as a direct result of Harvey's conduct:

> *Harvey's social media campaign also impacted and harmed the three minor Kassenoff Children* by depicting them in his videos – including their unblurred faces and names – without their consent or the consent of Mr. Kassenoff, the Children's custodial parent, and by causing Mr. Kassenoff to lose his job and, thereby, the Children's only means of support.   Moreover, *Harvey's false, defamatory and misleading*

*statements have caused* Mr. Kassenoff and *the Children to experience severe emotional distress*.

(AC, ¶7).

Furthermore, the Amended Complaint details several examples of the Children's severe emotional distress caused by Harvey:

Due to Harvey's actions, another three CPS investigations were instituted, resulting in the Children being interviewed by a CPS case worker several times and leading to more emotional distress.

Below are several additional examples demonstrating the severe emotional distress the Children have suffered as a direct and proximate cause of Harvey's actions:

- The Children, their school principals and/or their school guidance counselors have called Mr. Kassenoff on several occasions to pick the Children up from school due to their distress over the Harvey Videos.
- Plaintiff A.K. once walked into class and other children began whispering and pointing at her as the kid whose mother committed suicide and whose father abuses her.
- A classmate of Plaintiff A.K. once made a "Snapchat" – and sent it to A.K. and many of her friends – consisting of excerpts from the Harvey Videos.
- Plaintiff C.K. once called Mr. Kassenoff crying, asking him to pick her up from school as one of her friends told her that several parents of children in her school were in a "group chat," discussing her mother's suicide.
- Several of Plaintiff J.K.'s and A.K.'s friends' parents stopped letting their children come over to Mr. Kassenoff's house for playdates.
- Plaintiff J.K. suffered from panic attacks while away at summer sleepaway camp as a result of the Harvey Videos.

(*Id.*, ¶¶153-154).

Accepting the allegations of the Amended Complaint as true (as this Court must in deciding a Rule 12(b)(6) motion), the Children have sufficiently alleged their IIED claim.

### D. Plaintiffs' Amended Complaint Sufficiently States A Claim For Tortious Interference With Business Relationship

The Amended Complaint sufficiently alleges that Harvey has tortiously interfered with Mr. Kassenoff's business relationship with both Greenberg and its clients, including Samsung.  As to Greenberg, Harvey argues: (i) the Amended Complaint fails to allege that it was Harvey's conduct (and not Greenberg's internal investigation, for example) that caused Mr. Kassenoff to lose his job; (ii) Mr. Kassenoff "*voluntarily* resigned and was not terminated"; and (iii) a tortious interference claim cannot be based upon "news reporting."  (MTD at 21-23).  Harvey is wrong on each account.

First, the Amended Complaint alleges that Mr. Kassenoff lost his job "*as a direct and proximate result of Harvey's actions*," (AC, ¶133), including his videos of June 7, 2023 (in which he disclosed Mr. Kassenoff's work contact information (*id.*, ¶126)), June 8 (in which he "instructed his 3,000,000+ followers to go after Greenberg Traurig clients" (*id.*, ¶127)) and June 9 (in which he "incited his 3,000,000+ followers to contact a human resources conference at which a Greenberg Traurig employee was speaking" (*id.*, ¶128)):

Following Harvey's instructions in the Harvey Videos (including the June 7, 8 and 9 videos described immediately above), Harvey's followers bombarded Greenberg Traurig and Greenberg Traurig clients with emails, phone calls, voicemails, and social media attacks, demanding the termination of Mr. Kassenoff….

*As a direct and proximate result of Harvey's actions, on June 9, 2023, the CEO of Greenberg Traurig informed Mr. Kassenoff that the Firm had no choice but to sever ties with him.* To wit, GT's CEO told Mr. Kassenoff that he had until the next day (subsequently extended to June 11) to "voluntarily" resign (and receive a severance package) or he would be fired (and receive nothing). *Accordingly, on June 11, 2023, Mr. Kassenoff forcibly resigned from Greenberg Traurig due to the social media pressure on the Firm and its clients that came about as a direct and proximate result of Harvey's actions.*

(*Id.*, ¶¶132-133).

Harvey's argument that Mr. Kassenoff "*voluntarily* resigned and was not terminated" likewise fails. (MTD at 23). A tortious interference claim under Florida law requires: "'(1) the existence [of] a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the breach of the relationship.'" (*Id.* at 18 (quoting *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, 2019 WL 8063988, at *4 (N.D. Fla. Nov. 14, 2019)). The Amended Complaint alleges each of these elements: (i) Mr. Kassenoff had a business relationship with Greenberg (as a Shareholder) (AC, ¶123); (ii) Harvey knew of that relationship (*id.*, ¶¶89, 126-128); (iii) Harvey intentionally and unjustifiably interfered with that relationship by causing his "followers [to] bombard[] Greenberg Traurig and Greenberg Traurig

20

clients with emails, phone calls, voicemails, and social media attacks, demanding the termination of Mr. Kassenoff" (*id.*, ¶132); and (iv) Harvey's actions resulted in injury to Mr. Kassenoff as he was forced to resign from a job that he had held for nearly 18 years (*id.*, ¶133).

The fact that Mr. Kassenoff "resigned" does not change anything. As alleged in the Amended Complaint, Mr. Kassenoff "*forcibly* resigned" after "[Greenberg's] CEO told Mr. Kassenoff that he had until the next day (subsequently extended to June 11) to 'voluntarily' resign (and receive a severance package) or he would be fired (and receive nothing)." (*Id.*) Because Mr. Kassenoff's forced resignation was *not* voluntary and because it was a direct and proximate result of Harvey's actions, the Amended Complaint sufficiently alleges a tortious interference claim. In fact, the Superior Court of Connecticut recently addressed the virtually identical situation in *Garfinkle v. Jewish Family Serv. of Greater Hartford, Inc.*, 2022 WL 6366186 (Conn. Super. Ct. Aug. 15, 2022). In *Garfinkle*, the plaintiff alleged that the defendants tortiously interfered with business relations by interfering with his job.[9] In moving for summary judgment, the defendants argued "that the plaintiff cannot establish the actual loss element of a tortious interference with business relations

---

[9] Although defendants argued that plaintiff's tortious interference claim should be governed under New York or Florida law, the Court applied Connecticut law "[a]s the elements of a tortious interference with business relations cause of action are virtually indistinguishable under Connecticut, New York and Florida law." 2022 WL 6366186, at *5 n.5.

cause of action because he voluntarily resigned." *Id.* at *3.  In response, the plaintiff argued that "he was forced to resign." *Id.*  As explained by the Court, "'[i]t is axiomatic that a plaintiff cannot sustain a claim of tortious interference with business expectancy when he willingly surrendered his right to those expectancies ... [but if the plaintiff] were effectively left no practical choice other than quitting, then it would be unfair to characterize his decision as willingly made.'" *Id.* at *5 (quoting *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010)).  Because the *Garfinkle* Court was unable to "conclude, as a matter of law, that the plaintiff voluntarily resigned from his position," it denied defendants' motion. *Id.*  Similarly, given the choices Greenberg's CEO presented to Mr. Kassenoff (resign or be fired), "it would be unfair to characterize [Mr. Kassenoff's] decision as willingly made."

Finally, Harvey argues that Mr. Kassenoff's tortious interference claim "is predicated upon Defendant's citizen reporting on the Matrimonial Action" and "'[n]ews reporting is not the kind of "improper" conduct on which [a plaintiff] can base a tortious interference claim.'"  (MTD at 23 (quoting *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 460-461 (Fla. 3d DCA 2023)).  However, the allegations supporting the tortious interference claim were Harvey's instructions to "his 3,000,000+ followers to bombard Mr. Kassenoff's then employer, Greenberg Traurig, LLP ('GT'), and Samsung, one of GT's biggest clients, with emails, phone calls, voicemails, and social media attacks."  (AC, ¶2).  Thus, even if Harvey were

a journalist (he is not), the allegations supporting the claim do not constitute "news reporting."

Harvey also argues that the Amended Complaint fails to state a tortious interference claim as to Greenberg's clients, including Samsung.[10]  (MTD at 19). According to Harvey, this claim should be dismissed because (i) "the Greenberg Clients are not the clients of Kassenoff, but Greenberg's" and (ii) "the AC does not allege that Kassenoff represented the Greenberg Clients at the time of the alleged interference (AC ¶125) or that Kassenoff had an actual and identifiable understanding or agreement (individually) with the Greenberg Clients that he would definitively represent them in the future."  (MTD at 19-20).  Harvey is wrong on both accounts.

First, as a large law firm, Greenberg's clients are clients *of the firm* (not of any individual lawyer).   Moreover, Harvey acknowledged Mr. Kassenoff's relationship with Samsung by identifying him as Samsung's "lead counsel" in

---

[10] To the extent Harvey argues that "[o]ther than Samsung, the AC fails to identify any specific client that Defendant allegedly interfered with," (MTD at 19), the Middle District of Florida explained that it was "unaware of any authority – and Defendant does not cite to any – that stands for the proposition that a plaintiff must 'detail the established business relationships' in the pleading." *Deligdish v. Bender*, 2023 WL 5016547, at *9 (M.D. Fla. Aug. 7, 2023) (holding that the complaint's allegation that defendant interfered with plaintiff's "existing patients and prospective patients" was sufficient for a tortious interference claim).

numerous cases and stating that he wanted "millions of people to get the attention of

Samsung and let them know *who represents them*":

> When releasing Mr. Kassenoff's contact information in his June 7 Harvey Video failed to achieve Harvey's goal of getting Mr. Kassenoff fired, on June 8, Harvey next instructed his 3,000,000+ followers to go after Greenberg Traurig clients:
>
>> "*... And since [Greenberg] has not done the right thing and fired Allan Kassenoff who makes $1,000,000 a year, I figured its time to get their attention.* Hey Samsung, according to this case, and this case, and this case, and this case, and this case, Allan Kassenoff is your lead counsel [showing the below left image listing cases in which Mr. Kassenoff was lead counsel for Samsung]. Allan Kassenoff is your attorney. Now Samsung, I know you're a better company than that. *If there was only a way for millions of people to get the attention of Samsung [showing the below right image with the tags @Samsung and @SamsungUS] and let them know who represents them.*"

 

(AC, ¶127 (emphasis in original)).

Harvey even admitted that he interfered with Mr. Kassenoff's (and not Greenberg's) relationship with Samsung by getting Samsung to fire *him*:



(*Id.*, ¶134).

Harvey is also wrong in asserting that the tortious interference claim should be dismissed because the Amended Complaint fails to allege that Mr. Kassenoff was representing Samsung at the time of Harvey's interference or that he had an "understanding or agreement … that he would definitively represent them in the future." (MTD at 19-20). First, Mr. Kassenoff was actively representing Samsung, including in *MemoryWeb, LLC v. Samsung Electronics Co., Ltd. et al*, Civil Action

No. 3:22-cv-03776-VC (N.D. Cal.) at the time of Harvey's interference.[11]  Second, based upon the number of cases he had represented Samsung "over the years" as lead counsel (AC, ¶125), Mr. Kassenoff had much more than a "speculative hope of future business" from Samsung, as alleged by Harvey.  (MTD at 20).  Moreover, "[b]usiness relationships are subject to tortious interference claims *even if the parties are not required to continue the relationship*."  *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, 2022 WL 320952, at *8 (S.D. Fla. Jan. 28, 2022).  In fact, in *Audiology Distribution, LLC v. Simmons*, the defendant – like Harvey – argued that plaintiff's "mere 'expectancy' in the continued business of its customers cannot give rise to a claim for tortious interference with an advantageous business relationship." 2014 WL 7672536, at *12 (M.D. Fla. May 27, 2014).  The Court rejected this argument as being "contrary to binding precedent of the Eleventh Circuit and the Florida Supreme Court, which have consistently found business relationships subject to tortious interference claims *even when the parties had no apparent obligation to continue the relationships*."  *Id.* (citations omitted).

Finally, the two cases Harvey relies upon in support of this argument are readily distinguishable.  (MTD at 19-20).  In *Realauction.com, LLC v. Grant St.*

---

[11] The fact that Mr. Kassenoff was representing Samsung in the *MemoryWeb* case was indicated in the docket sheet of that case and "[a] district court may take judicial notice of the contents of a publicly available docket sheet."  *Hunter v. Unknown Prosecutor*, 2022 WL 3369494, at *3 n.2 (M.D. Fla. Aug. 16, 2022).

*Grp., Inc.*, the Court concluded that the plaintiff had *never* done work for Broward County.  82 So. 3d 1056 (Fla. 4th DCA 2011).  Thus, the Court rejected plaintiff's intentional interference claim as there was no relationship to interfere with – just a "speculative hope that [plaintiff] would receive business from the County in the future."  *Id.* at 1060.  Similarly, in *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, the Court rejected the plaintiff's attempt to base a tortious interference claim on the "89,000 people who had shopped at [their showroom] in the past and might shop there again in the future."  647 So. 2d 812, 814 (Fla. 1994).  Neither of these cases is remotely similar to Mr. Kassenoff's long-standing relationship with Samsung, which is much more akin to the facts of *Insurance Field Services, Inc. v. White & White*, a case in which the court found a business relationship even though the plaintiff and its clients did not have written agreements.  384 So.2d 303 (Fla. 5th DCA 1980).[12]

Accordingly, because the Amended Complaint sufficiently alleges a claim for tortious interference with respect to Greenberg and its clients, Harvey's Motion to Dismiss this claim must be denied.

---

[12] The *Ethan Allen* Court distinguished *White*, explaining *White* involved "a company had been regularly performing [insurance-based] work for sixteen insurance company clients [without written agreements].  The ongoing relationship with which the tortfeasor interfered there was far different than the one maintained by a retail furniture dealer with 89,000 past customers."  647 So. 2d at 815 n.1.

**E.   Plaintiffs' Amended Complaint Sufficiently States A Cyberstalking Claim**

Harvey first argues that the cyberstalking claim fails because Florida's statute requires a "course of conduct" comprised of at least *two* communications "'*directed at* the plaintiff'" and the Amended Complaint only includes *one* instance of Harvey directing communications at Mr. Kassenoff.  (MTD at 25-26 ("*Other than Video 4*, which only included Kassenoff's contact information, the AC fails to allege any communication … by Defendant directed to Kassenoff specifically.")).  Harvey is wrong as the Amended Complaint details at least *three* instances of Harvey directing communications at Mr. Kassenoff (in addition to the one Harvey acknowledges).  *First*, when Plaintiff C.K. sent Harvey a DM asking him to "[s]top getting involved [as he doesn't] even know the true story," Harvey directed the following communication at Mr. Kassenoff:

> *Where are your videos Allan?  Where are they at?  Look at me.  I know I know you are watching me.  Is this you messaging me through your children's account?  …  Look here Allan.*  I have put aside my usual content because the millions of women that follow me, they are Catherine Kassenoff.  *And I am going to be the thorn in your side until you people are in jail.*

(AC, ¶145).

*Second*, when Harvey travelled to New York City in July 2023, he directed the following threatening statement at Mr. Kassenoff:

> *Take a look at this Allan.  I've got something really important to show you.*  It's a beautiful city.

(*Id.*, ¶146).

*Third*, when Harvey showed a picture of Mr. Kassenoff's girlfriend, he directed the following statement at Mr. Kassenoff:

> Or how about after [Ms. Kassenoff] passed away, *your girlfriend* goes on social media to disparage her name.

(*Id.*, ¶145).  Because the Amended Complaint includes at least *four* instances of communications "directed at" Mr. Kassenoff, it sufficiently alleges a "course of conduct."[13]

Harvey next argues that Plaintiffs' request for an injunction must be denied as "the requested injunction would constitute an unconstitutional prior restraint in violation of Defendant's First Amendment rights."  (MTD at 27).  However, the Amended Complaint is seeking an injunction "restraining Harvey from committing any *acts of harassment* against Mr. Kassenoff."  (AC, Prayer for Relief, ¶A).  In *Neptune v. Lanoue*, the District Court of Appeal permitted such an injunction, instructing the lower court to "reformulate" the injunction "to protect the [complainant] from harassment and stalking."  178 So. 3d 520, 523 (Fla. 4th DCA 2013).  Further, to the extent the requested injunction may also cover defamatory

---

[13] Harvey also argues that the Amended Complaint fails to allege that Mr. Kassenoff suffered substantial emotional distress.  (MTD at 27).  However, the Amended Complaint alleges that Mr. Kassenoff "suffered severe emotional distress, including anxiety, panic attacks, loss of appetite, depression and fear for his and his Children's safety."  (AC, ¶¶137-140).

speech, the Middle District of Florida has recently explained that courts have "previously held that a narrowly tailored injunction prohibiting speech already found defamatory by the jury *is not an invalid prior restraint* when a judgment for monetary damages would not afford the plaintiff effective relief from a continuing pattern of defamation." *Deligdish v. Bender*, 2023 WL 5016547, at *12 (M.D. Fla. Aug. 7, 2023) (internal quotation marks omitted). After finding that the plaintiff had alleged irreparable harm and no adequate remedy at law, the *Deligdish* Court denied defendant's motion to dismiss plaintiff's request for a permanent injunction prohibiting "Defendant from 'creating or publishing any and all Statements about Plaintiff this Court adjudicates to be false and defamatory' and 'orders Defendant to take all actions necessary to remove [them] from the internet.'" *Id.*

Finally, each of the cyberstalking cases cited by Harvey as support for his argument that Mr. Kassenoff's request for an injunction should be dismissed is readily distinguishable. (MTD at 29-30). In each case, the court concluded that there was no cyberstalking and, thus, no violation of §748.048 meriting an injunction. *See, e.g., Krapacs v. Bacchus*, 301 So. 3d 976, 978 (Fla. 4th DCA 2020) ("Krapacs' actions do not qualify as cyberstalking."); *David v. Textor*, 189 So. 3d 871, 874 (Fla. 4th DCA 2016) ("conclud[ing] that the conduct alleged in the petition is not cyberstalking"); *Scott v. Blum*, 191 So. 3d 502, 504 (Fla. 2d DCA 2016) ("the emails here do not meet the statutory definition of cyberstalking").

**F.    Plaintiffs' Amended Complaint Is Not A Shotgun Pleading**

According to Harvey, the Amended Complaint should be dismissed as it violates Federal Rules of Civil Procedure 8(a)(2) and 10(b) and is a "shotgun" pleading.  (MTD at 5-11).  Rules 8(a)(2) and 10(b) require a complaint to give the defendant fair notice as to what claims are being asserted and the grounds for such claims.  *Edwards v. Wal-Mart Stores East, LP*, 2021 WL 10519455, at *1 (N.D. Fla. Sept. 15, 2021) (Wetherell, J.).  Accordingly, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (emphasis in original) (internal quotation marks omitted).

"A pleading that violates [Rules 8(a)(2) and 10(b)] is referred to as a 'shotgun pleading' and is subject to dismissal."  *Edwards*, 2021 WL 10519455, at *1.   In other words, "[a] shotgun pleading is one that 'fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'"  *Flink v. City of Fort Walton Beach Police Dep't*, 2022 WL 19363792, at *2 (N.D. Fla. Oct. 24, 2022) (Wetherell, J.) (quoting *Weiland*, 792 F.3d at 1323).

> The Eleventh Circuit has identified four types of shotgun pleadings: "The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination

of the entire complaint.  The second is a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third is a complaint that does not separate each cause of action or claim for relief into a different count.  And the final type of shotgun pleading is a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Edwards*, 2021 WL 10519455, at *1 (quoting *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021)).  The Amended Complaint does not fit within any of these categories.

*First*, the counts of the Amended Complaint do not "adopt[] the allegations of all *preceding counts*."  Although each count incorporates Paragraphs 1-77,[14] "this does not make the complaint a shotgun pleading, as the complaint realleges only the facts in the body of the complaint, *not those in the preceding counts*."  *GEICO v. AFO Imaging, Inc.*, 2021 WL 734575, at *5 (M.D. Fla. Feb. 25, 2021); *see also Ropella Group Inc. v. Loparex LLC*, 2022 WL 18539364, at *2 n.4 (N.D. Fla. Oct. 25, 2022) (Wetherell, J.) ("[T]he complaint is not a 'shotgun pleading' because it does not improperly incorporate all counts into each successive count as Defendant contends; rather, it merely incorporates common factual allegations into each count – which is not prohibited or particularly surprising.").

---

[14] Paragraphs 1-77 are directed to an introduction, the parties, jurisdiction and venue and a statement of facts.  Additionally, to the extent Harvey complains that each defamation claim "incorporates the same facts in each count" (MTD at 10), that is not surprising since the defamation claims are pled in the alternative.

*Second*, the Amended Complaint is not "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Although Harvey claims that the Amended Complaint "is repetitive, confusing, incoherent, and is replete with conclusory and vague assertions" and that he is "unable to discern which video(s) and/or statement(s) are alleged to be defamatory" (MTD at 6), Harvey's argument is belied by a review of the Amended Complaint which is well-organized by headings (and even subheadings). To wit, the heading "Robert Harvey's Slanderous and Malicious Smear Campaign on Social Media" (¶¶71-102) is further divided into subheadings, including for example, "Harvey's Defamatory Statements Regarding Abuse" (¶¶78-80); "Harvey's Defamatory Statements Regarding Mr. Kassenoff Taking Advantage Of Corruption In The Westchester County Court System" (¶¶81-86); and "Harvey's Defamatory Statements Regarding Mr. Kassenoff Paying The Matrimonial Professionals" (¶¶87-95). Further, each defamatory excerpt appears (in context) in a separate bullet point (with a footnote citation to the video in which it appears) with the actual defamatory language italicized. In short, the Amended Complaint is extremely well-organized and gives Harvey more than "*adequate notice* of the claims against [him] and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also id.* at 1324-25 ("The task of figuring out which of the 49 paragraphs that are incorporated into count one are relevant to [that] claim … is hardly a task at all. It is greatly

simplified by the organization of the 49 paragraphs of factual allegations into three subsections [with titles]").

*Third*, the Amended Complaint properly "separate[s] each cause of action or claim for relief into a different count." *Fourth*, given that Harvey is the only defendant in this case, the Amended Complaint does not "assert[] multiple claims against multiple defendants without specifying" which claims are asserted against which defendant.[15]

Harvey's real issue seems to be the Amended Complaint's length as it is "110 pages and over 205 allegations." (MTD at 6). But, "length alone does not make a shotgun pleading." *McKinney v. Portico, LLC*, 2023 WL 2889737, at *4 n.4 (N.D. Fla. Mar. 30. 2023) (Wetherell, J.) (internal quotation marks omitted); *see also GEICO*, 2021 WL 734575, at *6 ("And, the Court disagrees with the argument that the complaint is so long that is constitutes a shotgun pleading. Although the Court appreciates that the complaint is ninety-four pages and 244 paragraphs long, this is a complex civil conspiracy case, and the length does not make it so that Defendants are unable to prepare a proper response.").

---

[15] Harvey's gripe that the IIED claim "lumps both Plaintiffs together" (MTD at 11) is false and irrelevant. First, the IIED claim is only being brought on behalf of the Children. Second, the fourth category of shotgun pleadings involves "claims against multiple *defendants*" – not "claims brought by multiple *plaintiffs*."

Defendant's remaining issues likewise lack merit.  For example, Harvey alleges that the "AC is also riddled with irrelevant allegations" (MTD at 7) but "a complaint … will not fail for mere surplusage."  *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008).  Moreover, the allegedly "irrelevant allegations" are not "irrelevant."  For example, the allegations regarding Ms. Kassenoff (MTD at 8) are pertinent background information that provide context as to Harvey's defamatory statements.  Similarly, the statements about Harvey's DMs and his house (*id.* at 7-8) demonstrate that Harvey is nothing more than a social media "influencer" who preys on people "so that he can make money to 'pay' his bills."  (AC, ¶67; *see also id.*, ¶66 (citing a DM in which Harvey conceded that he "send[s] [his] 'followers' after" people that "he wants to publicly 'cancel' (i.e., destroy) … (as he did to Mr. Kassenoff)")).  Finally, to the extent Harvey argues that the Amended Complaint "fails to adequately link a cause of action to its factual predicates" (MTD at 9), that is demonstrably untrue as confirmed by reviewing the Paragraphs incorporated into each count.

Accordingly, Plaintiffs respectfully request that the Court deny Harvey's Motion to Dismiss the Amended Complaint as a "shotgun" pleading.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.  Alternatively, should this Court find

that the Amended Complaint fails to satisfy any of the applicable pleading requirements, Plaintiffs respectfully seek leave of Court to file a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).[16]

DATED:  December 11, 2023

Respectfully submitted,

By: */s/ Allan Kassenoff*
Allan Kassenoff, Esq. (admitted *pro hac vice*)
NY State Bar # 2964575
161 Beach Avenue
Larchmont, NY 10538
andrewka1973@outlook.com
(917) 623-8353

*Attorney for Plaintiffs Allan Kassenoff, A.K., C.K. and J.K.*

---

[16] *See Fisher v. Mitchell*, 2022 WL 19333275, at *3 (N.D. Fla. Apr. 18, 2022) (Wetherell, J.) (if a "plaintiff files a shotgun pleading, the Court must give him one chance to replead before dismissing his case") (internal quotation marks omitted).

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I certify that Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint complies with the word limit set forth in Local Rule 7.1(F) as it contains 7,999 words according to the word count function of Microsoft Word.

*/s/ Allan Kassenoff*
Allan Kassenoff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 11, 2023, a true and correct copy of the foregoing document was uploaded to the Court's CM/ECF system, which will send a notice of electronic filing to all parties by operation of the system.

*/s/ Allan Kassenoff*
Allan Kassenoff